**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**GLAXOSMITHKLINE LLC,**

                       **Plaintiff,**

    **vs.**                                                               **1:13-cv-00001**

                                                                                   **(MAD/RFT)**

**CLIFFORD BEEDE,**

                       **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **SCHOEMAN UPDIKE KAUFMAN** | **BETH L. KAUFMAN, ESQ.** |
| **STERNE & ASCHER LLP** | **PAULETTE J. MORGAN, ESQ.** |
| 551 Fifth Avenue | |
| New York, New York 10176 | |
| Attorneys for Plaintiff | |
| | |
| **FREEMAN HOWARD, P.C.** | **PAUL M. FREEMAN, ESQ.** |
| 441 East Allen Street | **MATTHEW J. GRIESEMER, ESQ.** |
| PO Box 1328 | |
| Hudson, New York 12534 | |
| Attorneys for Defendant | |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On January 2, 2013, Plaintiff commenced this action by filing a complaint, alleging claims for breach of contract, unjust enrichment, fraud, fraudulent inducement, and declaratory relief. *See* Dkt. No. 1.

      Currently before the Court is Defendant's motion to dismiss the complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 13, 19, 24. Also before the Court is Plaintiff's letter motion seeking to strike a certain document submitted by Defendant with his reply papers. *See* Dkt. Nos. 25, 26, 29.

## II. BACKGROUND

Plaintiff is a limited liability company organized under the laws of Delaware. *See* Dkt. No. 1 at ¶ 1. Defendant is a New York State domiciliary who was previously employed by Plaintiff. *See id.* at ¶¶ 2, 5-6.

Beginning in 1981, Defendant was employed by Stiefel Laboratories ("Stiefel"). *See id.* at ¶ 5. Plaintiff acquired Stiefel in 2009, and terminated Defendant in 2011 as part of a reduction in work force. *See id.* at ¶¶ 6-7. In conjunction with the termination, Plaintiff provided Defendant with a Benefits at Termination of Employment Employee Package ("Employee Package"). *See id.* at ¶ 7; *see also* Dkt. No. 13-2.[1] That Employee Package contained, as relevant here, a Notice of Termination of Employment, a Severance Pay and Medical/Dental Benefit Election Form, and a General Release. *See* Dkt. No. 13-2 at 4-9. Each of these documents provides that execution of the General Release was a precondition for entitlement to severance pay or other benefits. *See id.*

The Notice of Termination of Employment contained the following relevant statement:

> You may be eligible for certain benefits under the GlaxoSmithKline Severance Pay Plan. Your benefits are explained in this booklet. Eligibility for any GSK-sponsored employee benefit plans shall be determined in accordance with the terms of the Plans, and all benefits under the Severance Pay Plan are contingent upon your signing and not revoking a General Release Agreement form. By signing and not revoking the General Release Agreement, you surrender any legal claims against the Company. You should read the Release carefully before signing it. Because important legal rights are involved, the Company encourages you to consult your own attorney before signing the General Release.

*See id.* at 4.

---

[1] Defendant submitted the entire, original Employee Package, *see* Dkt. No. 13-2, as well as the page he modified, *see* Dkt. No. 13-3. The Court considers these documents for the purpose of this motion as they are referred to extensively in Plaintiff's complaint and are integral to that pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

Similarly, the Severance Pay and Medical/Dental Benefit Election Form provides as follows:

> You are eligible for Severance Pay of [amount redacted] if you sign and return the General Release, do not revoke it, and work until the conclusion of your assignment.

*See id.* at 5. The Election Form allowed for a choice between receiving the severance pay in one lump sum or two installments, with both options containing the following language:

> Your [Severance Pay] will be issued as soon as administratively possible after your termination date, provided you (1) sign this Election form, (2) sign and do not revoke the General Release, (3) sign the Older Worker Benefit Protection Act Disclosure (if provided to you), and (4) return the original and completed documents in the enclosed envelope in a timely manner.

*See id.* The Election Form also allowed Defendant to elect to receive paid medical/dental benefits for twelve (12) months, contingent upon his execution of, and not revoking, the General Release.

The General Release begins with a notice encouraging Defendant to consult an attorney, then states, under the heading "General Release of All Claims," as follows:

> In consideration of the monies and other consideration to be received by me and to which I am not otherwise entitled, the adequacy of which I hereby acknowledge, and intending to be legally bound, I hereby unconditionally and forever release, waive and forever discharge GlaxoSmithKMline LLC . . . from any and all claims, agreements, causes of action, demands or liabilities of any nature whatsoever in law or equity (collectively referred to as "claims") arising, occurring or existing at any time prior to the signing of this General Release, whether known or unknown, with the sole exception of the claims that are set forth in subparagraph I.B below.

Subparagraph I.B of the Release provides:

> This General Release does not apply to claims for worker's compensation benefits or unemployment benefits filed with applicable state agencies. This General Release does not bar a challenge under the Older Workers Benefit Protection Act ("OWBPA") as to the enforceability of this waiver and release of

3

> claims under the Age Discrimination in Employment Act
> ("ADEA") alone. This General Release does not apply to claims
> that cannot be released, for example, claims under federal law
> regarding alleged entitlement to unpaid overtime can be released
> only when supervised by the government or a court.

Directly above the signature line, under the heading "Additional Agreement," the Release states:

> I hereby acknowledge that the monies and other consideration
> payable to me in accordance with this General Release on and after
> the date of my termination of employment with the Company are
> contingent upon my execution of this General Release, without
> which execution I will not be entitled to such amounts. I agree that
> this General Release embodies the entire agreement between the
> Company and me, that this General Release cannot be modified
> except by written agreement, and that the Company has made no
> other representations except those set forth in this General Release
> (and the Benefits at Termination of Employment Employee
> Package) to induce me to sign this General Release and, if
> applicable, the Severance Pay and Medical/Dental Benefit Election
> Form. My signature on the line below constitutes my agreement
> with each provision contained herein.

*See id.* at 9.

Defendant altered subparagraph I.B of the release, dealing with exceptions, by adding the following language:

> This General Release does not apply to any claims I may have
> against Stiefel Laboratories, Inc. arising from its purchase of my
> shares of stock in Stiefel prior to its acquisition by
> GlaxoSmithKline.

*See* Dkt. No. 13-3. The alteration is in type-written font and extends into the margin. *See id.*

Defendant signed and returned the altered General Release, dated June 10, 2011. *See* Dkt. No. 19-1 at 31. Plaintiff thereafter sent Defendant severance pay and extended benefits, allegedly unaware of the alteration. *See* Dkt. No. 1 at ¶ 17. On or about August 14, 2012, Plaintiff sent Defendant a letter stating that Plaintiff had discovered the alteration and setting forth Plaintiff's belief that Defendant was therefore not entitled to the severance pay and other benefits he had

received. *See id.* at ¶ 18; *see also* Dkt. No. 13-4. Plaintiff's letter stated that Defendant could either execute and return an unaltered General Release or reimburse Plaintiff for the value of the severance pay together with the cost of providing medical/dental and outplacement service benefits. *See* Dkt. No. 1 at ¶ 19. Defendant did not comply with either option. *See id.* at ¶ 20.

The complaint contains five causes of action. Plaintiff's first cause of action seeks to recover the severance payment and the value of the other benefits on the theory that Defendant's retention of those benefits without providing an unaltered General Release constitutes unjust enrichment. *See id.* at ¶¶ 21-26. Plaintiff's second cause of action is for breach of contract, on the grounds that Defendant's alteration of the General Release was prohibited. *See id.* at ¶¶ 27-31. Plaintiff's third and fourth causes of action are for fraud and fraudulent inducement. *See id.* at ¶¶ 37-47. Plaintiff's fifth cause of action seeks a declaration that Defendant is bound by the terms of the unaltered General Release form. *See id.* at ¶¶ 48-50.

Currently before the Court are Defendant's motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff's motion to strike.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.    Plaintiff's Motion to Strike**

Plaintiff moves by letter motion to strike Exhibit "B" to Defendant's reply memorandum in further support of Defendant's motion to dismiss, or, in the alternative, for leave to supplement the record. *See* Dkt. Nos. 25, 26, 29. The exhibit in question is a December 2009 letter sent between counsel in an unrelated case involving Stiefel's repurchase of stock prior to its acquisition by

Plaintiff. While the parties dispute whether this evidence is barred from the Court's consideration by Rule 408 of the Federal Rules of Evidence, the Court need not reach this issue as the exhibit is in no way integral to Plaintiff's complaint and thus cannot properly be considered on a Rule 12(b)(6) motion. *See Mangiafico*, 471 F.3d at 398 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

Similarly, the Court does not rely on Defendant's affidavit, submitted in support of his motion, with the exception of the following: the Benefits at Termination of Employment Employee Package, the altered page of the General Release, and the letter from Plaintiff to Defendant demanding execution of an unaltered release and/or reimbursement of the value of the severance pay and benefits. *See* Dkt. Nos. 13-2, 13-3, 13-4. The Court also does not rely on the Declaration of Harry Bowers, submitted by Plaintiff, except to the extent that it considers the Benefits at Termination of Employment Employee Package and the complete altered General Release annexed thereto. *See* Dkt. No. 19-1. Finally, the Court declines to convert this motion to one for summary judgment at this stage in the proceedings. *See Kelly v. Ulster County*, No. 12-CV-1344, 2013 WL 3863929, *3 (N.D.N.Y. July 24, 2013).

Based on the foregoing, Plaintiff's motion to strike is denied as moot.

**C.     Breach of Contract**

Defendant contends that Plaintiff has failed to plead a plausible, or even nonfrivolous, breach of contract claim. Specifically, Defendant asserts that the altered General Release is clear and unambiguous on its face and that extrinsic evidence may not be used to attack its meaning.

Under New York law, a plaintiff alleging a breach of contract claim must establish the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach.

*See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." *131 Heartland Blvd. Corp. v. C.J. Jon Corp.*, 82 A.D.3d 1188, 1189 (2d Dep't 2011) (citations omitted).

"In order to adequately allege the existence of an agreement, 'a plaintiff must "plead the provisions of the contract upon which the claim is based."'" *Howell v. American Airlines, Inc.*, No. 05-CV-3628, 2006 WL 3681144, *3 (E.D.N.Y. Dec. 11, 2006) (quoting *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837(HB), 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006) (quoting *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816(MBM), 92 Civ. 5283(MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (quoting *Griffin Bros., Inc. v. Yatto*, 68 A.D.2d 1009, 1009, 415 N.Y.S.2d 114, 114 (App. Div. 3d Dep't 1979)))). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (citing *Window Headquarters*, 1993 WL 312899, at *3 (citing *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, 739 F. Supp. 744, 748 (N.D.N.Y. 1990))). "However, the complaint must at least 'set forth the terms of the agreement upon which liability is predicated . . . by express reference.'" *Id.* (quoting *Phoenix Four*, 2006 WL 399396, at *10; *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 928, 514 N.Y.S.2d 1002, 1003 (App. Div. 3d Dep't 1987)).

Contrary to Defendant's position, the Court is not inclined to view the contract as unambiguous at this stage of the proceedings. Though not addressed by the parties, the Court views the Benefits at Termination of Employment Employee Package as Plaintiff's offer to form a

unilateral contract, which offer could be accepted by Defendant performing the stated acts of signing and not revoking the General Release, filling out the Election Form, and continuing his work until the end of his assignment. Whether Defendant's alteration of the General Release prior to execution constituted an acceptance, or a rejection and counteroffer, cannot, in this instance, be determined by the pleading alone. Nor can the Court determine whether Plaintiff's payment of benefits constituted an acceptance of the potential counteroffer simply on the basis of the complaint and the integral documents. Thus, Plaintiff's cause of action for breach of contract is not barred by an unambiguous contract. As discussed below, however, Plaintiff's breach of contract must be dismissed as Plaintiff has failed to allege facts plausibly establishing the claim.

In this case, Plaintiff has failed to plead a plausible claim for breach of contract as Plaintiff has failed to allege facts establishing a breach. Plaintiff's allegations all concern Defendant's unilateral alteration of the Release – an alteration which is not alleged to have occurred after the execution of the contract – and the subsequent retention of benefits by Defendant. *See* Dkt. No. 1 at ¶¶ 15-20, 27-31. However, neither the alteration of the General Release nor the retention of benefits can stand as a breach. Put simply, if Defendant's alteration was without effect, meaning his signature on and return of the General Release acted as acceptance, then there is a binding contract including the terms of the unaltered General Release. In that case, there would no breach by Defendant's ineffective modification and Defendant would be entitled to retain the benefits under the terms of the contract. Similarly, if Defendant's alteration was a legitimate counteroffer and Plaintiff's tender of benefits constitutes acceptance, then there has been no breach.

Plaintiff argues that its breach of contract claim can survive on the theory that Defendant breached the covenant of good faith and fair dealing, implied by law in every contract, by altering

9

the Release. *See* Dkt. No. 19-19 at 18-19. However, such implied covenant arises only from the formation of the contract and thus any alterations made before contract formation cannot serve as the basis for a breach. *See Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing Corp.*, 53 F. Supp. 2d 199, 216 (N.D.N.Y. 1999) (citing *The Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933 (2d Cir. 1998)).

Finally, Plaintiff mentions in its opposition papers that, subsequent to the commencement of this case, Defendant commenced an action against Stiefel, and Stiefel principals and officers, based on Stiefel's purchase of his stock prior to Plaintiff's acquisition of Stiefel. While the Court is empowered to take judicial notice of the existence of this action, that does not change the fact that Plaintiff's complaint as presently before the Court fails to include any allegations encompassing the potentially impermissible suit.

Based on the foregoing, Defendant's motion to dismiss Plaintiff's second cause of action for breach of contract is granted, and such cause of action is dismissed without prejudice.

**D.  Unjust Enrichment**

Defendant contends that Plaintiff is precluded from maintaining its cause of action based on unjust enrichment because the severance payment and other benefits constituted "bargained-for benefits" under what was an "enforceable contract" governing the subject matter. *See* Dkt. No. 13-5 at 8-12. Plaintiff argues that pleading in the alternative is expressly allowed by Rule 8(b) of the Federal Rules of Civil Procedure, and that it has adequately alleged a cause of action for unjust enrichment.

To state a claim for unjust enrichment under New York law, "a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. . . . The theory of unjust enrichment lies as a quasi-contract claim.

It is an obligation the law creates in the absence of any agreement.'" *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citations and quotation marks omitted); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties").

Initially, Plaintiff is permitted at this stage of the proceedings to pursue the alternate theories of breach of contract and unjust enrichment. The parties' arguments make clear that they disagree as to the terms and even existence of a valid contract, and thus the action is not barred. *See Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 389; *Sforza v. Health Ins. Plan of Greater N.Y., Inc.*, 210 A.D.2d 214, 215 (2d Dep't 1994) (holding that "because where, as here, there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quantum meruit as well as contract, and will not be required to elect his or her remedies") (citation omitted). Moreover, Plaintiff has alleged (1) that Defendant benefitted by receipt of severance pay and other benefits, *see* Dkt. No. 1 at ¶¶ 17, 24; (2) that the enrichment was at Plaintiff's expense, *see id.*; and (3) that it would be inequitable to allow him to retain such funds without providing the unaltered General Release Plaintiff sought. *See generally id.* As such, Plaintiff has adequately alleged a cause of action for unjust enrichment. *See Beth Israel Medical Center*, 488 F.3d at 586.

Based on the foregoing, Defendant's motion to dismiss Plaintiff's first cause of action for unjust enrichment is denied.

**E.    Fraud and Fraudulent Inducement**

Defendant argues that Plaintiff's claims for fraud and fraudulent inducement must be dismissed as Plaintiff has failed to plead a material misrepresentation or a duty to disclose the alteration. *See* Dkt. No. 13-5 at 18-20. Defendant further contends that, to the extent Plaintiff alleges a misrepresentation, Plaintiff has failed to comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Dkt. No. 13-5 at 19; *see also* Dkt. No. 24 at 10-12.

"To state a claim for fraudulent misrepresentation under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (internal quotation marks and citation omitted). Where the fraud is based on the omission of a material fact, the plaintiff must show that the defendant had a duty of disclosure which was breached. *See TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 90–91 (2d Cir. 2005) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993)). A duty of disclosure arises "where the parties enjoy a fiduciary relationship, [or] where one party possesses superior knowledge, not readily available to the other, and knows the other is acting on the basis of mistaken knowledge." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 123 (2d Cir. 1984).

"'[I]t is well settled that mere allegations of breach of contract do not give rise to a claim for fraud or fraudulent inducement.'" *OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc.*, 952 F. Supp. 120, 122 (N.D.N.Y. 1997) (quotation and other citation omitted); *see also D.S. Am. (East), Inc. v. Chromagrafx Imaging Sys., Inc.*, 873 F. Supp. 786, 795 (E.D.N.Y. 1995). "General allegations that [the] defendant entered into a contract while lacking the intent to perform it are

12

insufficient" to support a claim for fraudulent misrepresentation or concealment. *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995); *TVT Records*, 412 F.3d at 91 (holding that "the intention to breach does not give rise to a duty to disclose. Instead, the duty to disclose must exist separately from the duty to perform under the contract" (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996))) (other citations omitted).

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, because the court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal citation omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

Based on the above principles, the Court concludes that Plaintiff has failed to adequately plead its claims for fraud as Plaintiff has failed to allege facts establishing a material affirmative misrepresentation or a duty to disclose.

Plaintiff alleges that "[b]y returning a signed General Release to [Plaintiff] without notifying [Plaintiff] that he had altered the terms of the General Release, defendant misrepresented that he had executed the General Release in its original form." *See* Dkt. No. 1 at ¶ 38. While Plaintiff uses the term "misrepresentation," the Court views this as the omission of a material fact. Addressing this point, Plaintiff argues in its memorandum that "[Defendant] continued to represent that he was signing the General Release" despite knowing that the altered document could not be considered a true "general release." *See* Dkt. No. 19-19 at 26. Plaintiff, however, fails to allege any specific representations in its complaint, *see* Dkt. No. 1 at ¶¶ 17, 38-41, and fails even to argue any specific examples in its memorandum. As such, Plaintiff has failed to adequately plead an affirmative misrepresentation with the particularity required of Rule 9(b). *See* Fed. R. Civ. P. 9(b); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Plaintiff's causes of action for fraud can, therefore, proceed only if Plaintiff has alleged facts plausibly establishing that Defendant owed a duty to disclose the fact that he had altered the Release.

In this case, Plaintiff has failed to allege facts plausibly establishing that Defendant owed a duty of disclosure. There is no allegation that the parties shared a fiduciary relationship and Defendant was not even in Plaintiff's employ at the time he submitted the altered General Release. *See* Dkt. No. 13-2 at 9 (stating that the release cannot be signed before the last day of employment). Further, while Plaintiff has alleged that Defendant had superior knowledge of the alteration, Plaintiff has failed to allege facts establishing that it lacked the ready means to gain

that knowledge. On the contrary, the allegations of the complaint and the seven day revocation period provided for in the Benefits at Termination of Employment Employee Package suggest that Plaintiff had possession of the altered document and thus the means to discover the added exception for a period of at least a week before it began paying Defendant severance benefits. *See* Dkt. No. 1 at ¶¶ 15-17; *see also* Dkt. No. 13-2.

Based on the foregoing, Defendant's motion to dismiss Plaintiff's third and fourth causes of action based on fraud is granted, and such causes of action are dismissed without prejudice.

**F.     Declaratory Judgment**

Plaintiff's fifth cause of action seeks a declaration that Defendant is bound by the terms of the unaltered general release. *See* Dkt. No. 1 at ¶¶ 48-50. Defendant contends that declaratory judgment is inappropriate in this case as resolution of the other causes of action will necessarily determine the issue. *See* Dkt. No. 13-5 at 21-22.

The Court has broad discretion over whether to exercise declaratory jurisdiction. *See Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir. 1968). In determining whether to exercise declaratory jurisdiction, a court considers whether a declaratory judgment will (1) "serve a useful purpose in clarifying and settling the legal relations in issue;" or (2) "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (citation omitted).

In this case, neither objective would be met by the exercise of declaratory jurisdiction. First, the determination of whether the parties entered into a valid contract and the terms of such contract is at the heart of the parties' dispute, so a declaratory judgment will serve no useful purpose. *See, e.g.*, *CAMOFI Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480-81 (S.D.N.Y. 2006). Second, declaratory judgment will not afford Plaintiff relief from uncertainty

15

regarding the validity and terms of the General Release.  The Court notes that Defendant has commenced an action in this Court, pressing the very claims his alteration seeks to except from the General Release.  *See Beede et al v. Stielfel Laboratories, Inc. et al*, No. 13-cv-120.  Thus, there is no cloud of uncertainty affecting Plaintiff's rights as the harm, if any, has already occurred.  *See United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) (noting that the fundamental purpose of declaratory judgment is "to afford [a plaintiff] an early adjudication without waiting until [the plaintiff's] adversary should see fit to begin suit").

For the foregoing reasons, Defendant's motion to dismiss the fifth cause of action for declaratory judgment is granted, and the cause of action is hereby dismissed with prejudice.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's motion to strike is **DENIED** as moot; and the Court further

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's causes of action for breach of contract, fraud and fraudulent inducement are **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's cause of action for declaratory judgment is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Defendant's motion is **DENIED** in all other respects; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 6, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge